# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MARTELL L. LOGAN,

        Plaintiff,

v.

UNICARE LIFE AND HEALTH
INSURANCE, INC., COMPSYSTEM TRUST,
THE BEGLEY ORGANIZATION, LLC,
MICHAEL J. BEGLEY, and MASS MUTUAL
BENEFITS MANAGEMENT, INC.,

        Defendants.
_____/

CASE NO. 05-72928
HON. LAWRENCE P. ZATKOFF

## **OPINION AND ORDER**

AT A SESSION of said Court, held in the City of Port Huron, County of Saint Clair,
State of Michigan, on June 13, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Plaintiff's and Defendant UniCare's cross motions for judgment on the administrative record [dkt 42, 59]. The motions have been fully briefed by the parties. The Court finds that the parties have adequately set forth the relevant law and facts, and that oral argument would not aid in the disposition of the instant motions. *See* E.D. MICH. L.R. 7.1(e)(2). Accordingly, the Court ORDERS that the motions be decided on the briefs submitted. For the reasons set forth below, Plaintiff's motion is GRANTED and UniCare's motion is DENIED.

## II. BACKGROUND

This is an action for long-term disability benefits under an employee benefits plan subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B) ("ERISA"). Plaintiff began working for Defendants Michael Begley and the Begley Organization on January 3, 2000, as a computer technician. Begley was a general agent for MassMutual Life Insurance Company. MassMutual established a trust, Defendant Compsystem Trust, to hold a group insurance and disability policy for the employees of MassMutual's general agents. The group policy [hereinafter "the Plan"] was issued by UniCare.[1]

In February of 2002, Begley was terminated as a general agent of MassMutual. Begley's employees, including Plaintiff, then became direct employees of MassMutual. In July of 2002, Seymour-Gill became a general agent of MassMutual, and took over the old Begley agency. MassMutual and Seymour-Gill held a meeting with the former Begley employees, including Plaintiff, and told them there would be no change in their benefits. Seymour-Gill's application for insurance through the Compsystem Trust stated that the Plan was "continuing coverage under a new name." Plaintiff's Exh. 5.

In April of 2003, Plaintiff began suffering from a severe gastrointestinal disorder that required several trips to the emergency room at William Beaumont Hospital. Plaintiff's condition causes him to become violently ill at unpredictable times. Plaintiff subsequently sought treatment at the Mayo Clinic in Minnesota. To date, Plaintiff's condition has not been cured.

On June 12, 2003, Plaintiff was terminated by Seymour-Gill.[2] In April of 2004, Plaintiff

---

[1] Cites to the administrative record will be given as UNI [page numger].

[2] The reasons for Plaintiff's termination are not at issue in the instant case.

applied to UniCare for long-term disability benefits, claiming that he had been disabled since April of 2003. When UniCare contacted Seymour-Gill to receive information regarding Plaintiff, it was told that Plaintiff's hire date was July 7, 2002. UNI 49. The Plan contains the following pre-existing condition exclusion:

> This provision will not cover any total disability:
>
> • which is caused or contributed to, by, or results from a pre-existing condition; and
>
> • which begins in the first 24 months after your effective date, unless you received no treatment of the condition for 12 consecutive months after your effective date.
>
> "Treatment" means consultation, care or services provided by a doctor including diagnostic measures and taking prescribed drugs and medicines.
>
> "Pre-existing Condition" means an illness or injury for which you received treatment within 12 months prior to your effective date.

UNI 29. UniCare also learned that Plaintiff had received treatment for abdominal pain beginning in October 2001. Based on an effective date of July 7, 2002, UniCare held that Plaintiff's gastrointestinal disorder was a pre-existing condition, and not covered by the Plan. Thus, UniCare denied Plaintiff's claim.

Plaintiff appealed the denial, noting that his hire date was January of 2000, not July of 2002. Plaintiff's appeal was referred to UniCare employee Vikki Harvey. Ms. Harvey contacted Cindy Kehoe, the bookkeeper for the Begley Organization when Plaintiff worked there. Ms. Kehoe confirmed that Plaintiff's hire date was January 3, 2000. However, Ms. Kehoe also stated that premiums for Plaintiff were not being paid to UniCare, based on an error by Begley's business manager. Ms. Kehoe did not know why the error was not caught. UNI 202.

Ms. Harvey also contacted Barbara Winkler, an employee of MassMutual Benefits

3

Management, which manages the Compsystem Trust. Ms. Winkler stated that although employees do not pay the premiums for coverage under the Plan, they still need to elect coverage in order to be eligible. Ms. Winkler stated that there was no record of Plaintiff electing coverage before 2002. UNI 202.

On November 12, 2004, Ms. Harvey denied Plaintiff's appeal. Ms. Harvey noted that UniCare's documentation indicated that Plaintiff was hired on July 7, 2002. Ms. Harvey also noted that although UniCare had been told that Plaintiff was hired on January 3, 2000, UniCare had not received any documents stating that Plaintiff was covered by the Plan at that time. UNI 616. Thus, Plaintiff's claim was denied based on the pre-existing condition exclusion. Ms. Harvey also stated that UniCare had "not conducted an investigation to determine if Mr. Logan would be disabled as defined under this policy and reserve[d] the right to do so at a later date." UNI 617. Plaintiff subsequently brought suit against UniCare, Michael Begley, the Begley Organization, MassMutual Benefits, and the Compsystem Trust.

### III. LEGAL STANDARD

In the Sixth Circuit, "in an ERISA claim contesting a denial of benefits, the district court is strictly limited to consideration of the information actually considered by the administrator." *Killian v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). The Court is required to review the plan administrator's decision based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. *Wilkins v. Baptist Healthcare System Inc.,* 150 F.3d 609, 619 (6th Cir. 1998). In evaluating an administrator's or fiduciary's denial of benefits under an ERISA governed plan, courts must apply a *de novo* standard of review unless the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits

4

or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000).

When the plan clearly confers discretion upon the administrator to determine eligibility or construe the plan's provisions, federal courts review the administrator's decision under an "arbitrary and capricious" standard. *See Wells v. U.S. Steel & Carnegie Pension Fund, Inc.,* 950 F.2d 1244, 1248 (6th Cir. 1991). When an administrator is acting under a conflict of interest, however, the conflict must be taken into account to determine the proper deference to afford the plan administrator. *See Firestone*, 489 U.S. at 115.

## IV. ANALYSIS

### A. Standard of Review

The parties initially dispute the appropriate standard of review. Plaintiff argues that because the Plan does not specifically give Defendant discretion to review claims and interpret plan provisions, the *de novo* standard should be used. The Sixth Circuit has noted that the plan need not specifically contain "the word 'discretion' or any other 'magic word.'" in order to grant discretionary authority. *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 n.2 (6th Cir. 1992) (quoting *Block v. Pitney Bowes Inc.*, 952 F.2d 1450, 1453 (D.C. Cir. 1992)). However, the plan must still "'expressly' give discretionary authority to the administrator." *Id.* at 1571.

The Plan states that "[d]ue written proof of claim is required to receive benefits under this group insurance plan." UNI 255. UniCare argues that this language is sufficient to confer discretionary authority. In *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir. 1998), the Sixth Circuit, sitting *en banc*, analyzed a plan that stated that the plan administrator "shall have the right to require as part of the proof of claim satisfactory evidence . . . ." *Id.* at 555. The Sixth Circuit held

5

that:

> [T]he only reasonable interpretation of the Plan is the Aetna requests the evidence, reviews it, and then makes a benefits determination. . . . We therefore conclude that the plan clearly grants discretion to Aetna because, under the only reasonable interpretation of the language, Aetna retains the authority to determine whether the submitted proof of disability is satisfactory.

*Id.* at 557. Thus, the plan administrator's decision was reviewed using the "arbitrary and capricious" standard.

The instant Plan does not require "satisfactory evidence," but rather "due written proof of claim." However, in this context "due" is synonymous with satisfactory. Webster's dictionary defines "due" as "Meeting special requirements: SUFFICIENT." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY (1984). "Satisfactory" is defined as "Giving the satisfaction needed to meet a demand or requirement: ADEQUATE." *Id.* These definitions are functionally equivalent.

This conclusion is supported by the unpublished Sixth Circuit opinion *Leeal v. Cont'l Cas. Co.*, 17 Fed. Appx. 341 (6th Cir. 2001). The district court found that a plan requiring "due written proof of loss" granted discretionary authority, citing *Perez*, and the Sixth Circuit affirmed. Thus, the instant Plan granted Unicare discretionary authority, and Unicare's decision to deny benefits is reviewed under the "arbitrary and capricious" standard.

## B.    Plaintiff's eligibility under the Plan

As discussed above, UniCare initially denied Plaintiff's claim for long-term disability benefits upon finding that he had a pre-existing condition. This finding was based on information UniCare received stating that Plaintiff's hire date was July 7, 2002. During the appeal process, Plaintiff informed UniCare that his hire date was in fact January 3, 2000. UniCare was able to confirm this information with Ms. Kehoe, who informed UniCare that Plaintiff was hired on January

6

3, 2000, but was not enrolled in the Plan due to an error by Begley's business manager.

However, in Ms. Harvey's letter rejecting Plaintiff's appeal, she continued to rely on an alleged start date of July 7, 2002. Although Ms. Harvey acknowledged that UniCare had received confirmation that Plaintiff's actual hire date was January 3, 2000, she dismissed this information based on Ms. Winkler's statement that MassMutual had no record of Plaintiff electing coverage at that time.

UniCare's initial decision to deny Plaintiff's claim for long-term disability benefits was neither arbitrary nor capricious. Based on the information UniCare had at the time, Plaintiff's hire date was July 7, 2002, and thus his claim was excluded by the pre-existing condition clause. However, UniCare's subsequent decision to deny Plaintiff's appeal was arbitrary and capricious.

Although the arbitrary and capricious standard is deferential, "it is not a rubber stamp for the administrator's determination." *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006). Under the arbitrary and capricious standard, the administrator's decision will be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)).

UniCare received information indicating that its initial finding of a July 7, 2002, hire date for Plaintiff was incorrect, and that his actual hire date was January 3, 2000. UniCare's rationale for disregarding this information was that there was no record of Plaintiff's enrollment in the Plan when he was hired on January 3, 2000.

However, this reasoning does not comport with the requirements of the Plan. The following Plan language describes how employees become eligible for coverage, and when that coverage

7

begins:

> To obtain personal insurance, you need to be a qualified employee. You are a "qualified employee" only if you meet all of these requirements:
>
> 1. You are a full-time employee of the plan sponsor, working for pay on a scheduled normal work week of at least 20 hours, and
>
> 2. You perform that work at the plan sponsor's usual place of business, except for duties of a kind that must be done elsewhere, and
>
> 3. You are in a covered employment class named in the group policy. Specific information regarding the group policy and terms may be obtained from the plan sponsor.
>
> You become eligible on the day you become a qualified employee.

UNI 22.

> EFFECTIVE DATE OF INSURANCE
>
> Once you have become eligible for insurance, this section tells when your insurance will begin.
>
> **Personal Insurance**
>
> Except as explained in this section, your personal insurance will begin on the date you become eligible for such insurance. At that time, you will receive a Statement of Coverage form confirming your insurance under the group policy. That form will show your name and certain details of your insurance.
>
> The plan sponsor may require employees to contribute toward the cost of all or part of their personal insurance. Any such contributory insurance will not become effective for you before you sign a form agreeing to make those contributions. The form may be obtained from the plan sponsor. If you sign the form more than 31 days after you become eligible, your contributory insurance will be deferred until January 1 of the next calendar year if elected during the annual open enrollment period.

UNI 24.

There is no dispute that Plaintiff was qualified to receive coverage under the Plan. Likewise, there is no dispute that Plaintiff was not required to contribute towards his insurance; the cost was

8

paid by his employer, Begley. Thus, pursuant to the Plan, Plaintiff was not required to sign a form agreeing to make contributions towards his disability insurance.

Ms. Kehoe informed UniCare that Plaintiff was hired on January 3, 2000, but was not enrolled in the plan due to an error by Begley's business manager. UniCare argues that if Plaintiff was not enrolled in the Plan due to an error on the part of a Begley employee, it would be wrong to hold UniCare accountable for that error.

However, the UniCare group insurance policy states that:

> If the Plan Sponsor gives UNICARE any incorrect information, the relevant facts will be determined to establish if insurance is in effect and in what amount.
>
> No qualified employee or dependant will be deprived of insurance to which he or she is otherwise entitled or have insurance to which he or she is not entitled, because of any misstatement of fact by the Plan Sponsor.

Plaintiff's Exh. 4.[3] Thus, contrary to UniCare's assertion, it can be held accountable for errors made by Begley employees. In this case, Plaintiff's hire date of January 3, 2000, was a relevant fact. However, UniCare ignored this fact when making its benefit determination. Thus, the decision to deny benefits was not the result of a "deliberate, principled reasoning process," and cannot be upheld by the Court.

Having determined that UniCare's decision to deny Plaintiff long-term disability benefits was arbitrary and capricious, the Court must determine what remedy to order. The Sixth Circuit has held that "where the 'problem is with the integrity of [the plan's] decision-making process,' rather than 'that [a claimant] was denied benefits to which he was clearly entitled,' the appropriate remedy

---

[3]The Court was unable to locate a copy of the group policy in the voluminous administrative record. However, UniCare presumably consulted the policy when making its benefit determination. In any event, a decision made without consulting the policy would clearly be an arbitrary and capricious decision.

9

generally is remand to the plan administrator." *Elliott*, 473 F.3d at 622 (quoting *Buffonge v. Prudential Ins. Co. of Am.*, 426 F.3d 20, 31 (1st Cir. 2005)). In order for Plaintiff to receive long-term disability benefits, he must be totally disabled per the terms of the Plan. In UniCare's rejection of Plaintiff's long-term disability claim, it stated that it had not conducted an investigation to determine if Plaintiff was totally disabled. Thus, there is no decision on this point for the court to review, and, although Plaintiff has provided some medical information, the issue has not been formally briefed or argued. As the Sixth Circuit has noted, the federal courts are not "medical specialists," and at this stage the Court does not have sufficient information to make a ruling on the extent of Plaintiff's disability. *Elliott*, 473 at 623. Thus, Court orders that the case be remanded to UniCare for a determination as to whether Plaintiff is totally disabled per the terms of the Plan.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for judgment on the administrative record is GRANTED and UniCare's motion for judgment on the administrative record is DENIED. Plaintiff's claim for long-term disability benefits is REMANDED to UniCare for a determination as to whether Plaintiff is totally disabled per the terms of the Plan.

IT IS SO ORDERED.

> s/Lawrence P. Zatkoff
> LAWRENCE P. ZATKOFF
> UNITED STATES DISTRICT JUDGE

Dated: June 13, 2007

## CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on June 13, 2007.

> s/Marie E. Verlinde
> Case Manager
> (810) 984-3290